*Beck v. Manhattan Coll.*

# United States Court of Appeals
# for the Second Circuit

August Term 2023

Argued:  June 13, 2024
Decided: April 29, 2025

No. 23-1049

---

CZIGANY BECK, individually and on behalf
of all others similarly situated,

*Plaintiff-Appellant*,

*v.*

MANHATTAN COLLEGE,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-3229, Louis L. Stanton, *Judge*.

---

Before:  SULLIVAN, NATHAN, and KAHN, *Circuit Judge*s.

Czigany Beck appeals from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*) dismissing her claims that Manhattan College breached its implied contract with her or, in the alternative, was unjustly enriched when it refused to refund a portion of her tuition and fees after it transitioned to remote learning in response to the COVID-19 pandemic.

Beck argues that our decision in *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), requires that the district court's judgment be reversed. Manhattan College argues that subsequent decisions from the Appellate Division of the New York Supreme Court, Second Department in *Croce v. St. Joseph's College of New York*, 195 N.Y.S.3d 210 (2d Dep't 2023), and the Fourth Department in *McCudden v. Canisius College*, No. 23-1865, 2025 WL 814588 (N.Y. App. Div. Mar. 14, 2025), require that the district court's judgment be affirmed. Because the parties have identified a split between how federal and state courts are applying New York contract-law principles, which implicates significant state policy interests, we reserve decision on this appeal in order to **CERTIFY** the following question to the New York Court of Appeals: whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments.

QUESTION CERTIFIED.

PAUL J. DOOLITTLE, Poulin, Willey, Anastopoulo, LLC, Charleston, SC (Blake G. Abbott, Poulin, Willey, Anastopoulo, LLC, Charleston, SC; Edward Toptani, Toptani Law PLLC, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

JONATHAN B. FELLOWS (Gregory B. Reilly III, Samuel G. Dobre, *on the brief*), Bond, Schoeneck & King PLLC, New York, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Czigany Beck appeals from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*) dismissing her claims that Manhattan College breached its implied contract with her or, in the alternative,

was unjustly enriched when it refused to refund a portion of her tuition and fees after it transitioned to remote learning in response to the COVID-19 pandemic. Beck argues that our decision in *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), requires that the district court's judgment be reversed. Manhattan College argues that subsequent decisions from the Appellate Division of the New York Supreme Court, Second Department in *Croce v. St. Joseph's College of New York*, 195 N.Y.S.3d 210 (2023), and the Fourth Department in *McCudden v. Canisius College*, No. 23-1865, 2025 WL 814588 (N.Y. App. Div. Mar. 14, 2025), require that the district court's judgment be affirmed. Because the parties have identified a split between how federal and state courts are applying New York contract-law principles, which implicates significant state policy interests, we reserve decision on this appeal in order to CERTIFY the following question to the New York Court of Appeals: whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments.

# I.    BACKGROUND

In spring 2020, Beck was a full-time student at Manhattan College, a private college located in Riverdale, New York.[1]  To enroll for the spring semester, Beck paid tuition and a $685 "Comprehensive Fee," which covered costs for the campus health center, student activities, athletics, and other services and experiences. Beck's classes and extracurricular activities at Manhattan College were conducted in person until approximately March 9, 2020, after which the College largely shut down its campus and transitioned to online classes and programming in response to the COVID-19 pandemic.  Beck alleges that "almost no students were permitted to be on campus."  J. App'x at 16.  Because of these changes, Beck received an in-person education for only forty-six percent of the spring semester.  Nevertheless, Manhattan College refused to offer refunds for tuition or fees to any student.

On April 23, 2020, Beck brought this putative class action suit alleging that Manhattan College breached its implied contract with her or, in the alternative, was unjustly enriched when it refused to refund a portion of her tuition and fees

---

[1] The facts stated herein are derived from the Amended Complaint and are assumed to be true for purposes of this appeal.  We note that after this lawsuit was filed and argument heard, Manhattan College changed its name to Manhattan University.  *See Manhattan College Announces Name Change to Manhattan University*, Manhattan Univ. (Aug. 21, 2024, 12:30 PM), https://perma.cc/6FY4-3VF2.  We continue to refer to the school as Manhattan College, as that was its name at the time of the events in question.

after the College shut down its campus and transitioned to remote learning. In a May 7, 2021 order, the district court granted Manhattan College's motion for judgment on the pleadings as to Beck's primary claims for breach of implied contract as to her payment of tuition and fees.[2] With respect to tuition, the district court concluded that the statements and representations Beck identified in her complaint were "not specific enough" to constitute a promise for "in-person classes or access to specific on-campus facilities or services." *Beck v. Manhattan Coll.*, 537 F. Supp. 3d 584, 588 (S.D.N.Y. 2021). With respect to fees, the district court concluded that the terms of the implied contract between Beck and Manhattan College – specifically, the statement on Manhattan College's website that the Comprehensive Fee was "nonrefundable" – required dismissal of her breach of contract claim. *Id.* at 589.

Having found that a valid, enforceable contract provision governed Beck's claim for a refund of her fees, the district court further concluded that Beck was barred from proceeding on an unjust enrichment theory as to fees. But the district court found that no contract term governed Beck's unjust enrichment claim for

---

[2] The district court also dismissed Beck's conversion and consumer-protection claims, which Beck has not appealed.

tuition and thus denied that part of Manhattan College's motion for judgment on the pleadings.

After discovery, Manhattan College moved for summary judgment on Beck's remaining unjust enrichment claim as to tuition, and the district court granted that motion. Specifically, the district court concluded that "there [was] nothing unjust about the College retaining Beck's tuition payment even though it provided only online instruction." *Beck v. Manhattan Coll.*, No. 20-cv-3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. June 29, 2023). The district court emphasized that the switch to online instruction was reasonable given the exigencies of the global pandemic. The district court also noted that Beck still was able to earn credits towards her degree. Accordingly, the district court concluded that "[t]here is no genuine issue of material fact and Manhattan College is entitled to judgment as a matter of law on Beck's claim for unjust enrichment" as to tuition. *Id.* Having dismissed all of Beck's claims, the district court entered final judgment on June 29, 2023. This appeal followed.

## II.    STANDARD OF REVIEW

"We review *de novo* a district court's grant of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)." *Goldberg v. Pace Univ.*, 88

6

F.4th 204, 210 (2d Cir. 2023). For a complaint to withstand judgment on the pleadings, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which is the same standard that governs a motion to dismiss under Rule 12(b)(6). *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (internal quotation marks omitted). In reviewing a motion made pursuant to Rule 12(c), a court "may consider all documents that qualify as part of the non-movant's pleading, including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (emphasis omitted) (internal quotation marks omitted).

We also review *de novo* a district court's grant of summary judgment, construing "the evidence in the light most favorable to the non[-]moving party and draw[ing] all reasonable inferences in that party's favor." *Mujo v. Jani-King Int'l, Inc.*, 13 F.4th 204, 208 (2d Cir. 2021) (internal quotation marks omitted). A party may prevail on a motion for summary judgment only when "there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Michel v. Yale Univ.*, 110 F.4th 551, 555 (2d Cir. 2024).

### III.    DISCUSSION

There is no dispute that Beck and Manhattan College formed an implied contract. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment."). The central question on appeal is whether Beck pleaded facts sufficient to support a reasonable inference that the parties' contract required Manhattan College to provide an in-person education. Our decision in *Rynasko*, 63 F.4th at 198 – issued after the district court's rulings – would suggest that the answer to this question is yes, and that the district court therefore erred in dismissing Beck's breach of implied contract claim as to tuition. But the Second Department's decision in *Croce*, 195 N.Y.S.3d at 213, and the Fourth Department's decision in *McCudden*, 2025 WL 814588, at *1–2, point in the other direction, with the latter opinion squarely rejecting our conclusion in *Rynasko*. Given this incipient split between how federal and state courts are applying New York contract-law principles, which implicates significant state policy interests, we believe certification to the New York Court of Appeals is appropriate.

**A.** **Under *Rynasko*, the district court's dismissal of Beck's breach of implied contract claim as to tuition was erroneous.**

The district court concluded that Beck had not pleaded facts sufficient to support a reasonable inference that the parties' contract for tuition required Manhattan College to provide an in-person education. If *Rynasko* governs this case, that decision was erroneous.

As we noted in *Rynasko*, it is a well-established principle of New York law that "specific promises set forth in a school's bulletins, circulars[,] and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." 63 F.4th at 197 (quoting *Keefe v. N.Y. L. Sch.*, 897 N.Y.S.2d 94, 95 (1st Dep't 2010)). We must therefore determine whether "a reasonable factfinder [could] conclude that before [Beck] enrolled in the Spring 2020 semester, the parties mutually intended and implicitly agreed that [Manhattan College] would provide *generally* in-person courses, activities, facilities, and services." *Id.* at 198 (emphasis added). Here, Beck's amended complaint identified numerous marketing statements advertising the benefits of physically attending Manhattan College. For example, Manhattan College emphasized that students are offered "a beautiful campus with a close-knit community and homey atmosphere" along with "easy access to the most exciting

9

city in the world – New York." J. App'x at 14. Manhattan College further described New York City as "The World's Greatest Classroom," touting its "catalog of courses that use New York City as a classroom." *Id.* at 23. It also promised students "immersive, hands-on experiences in New York City." *Id.* at 24. These representations are similar to those we considered in *Rynasko*, in which we found that New York University's advertisement of specific on-campus locations and its New York City connection supported an inference that the parties' implied contract included a promise of an in-person education. *See* 63 F.4th at 190, 198.

Several other factors that we discussed in *Rynasko* further support an inference that Manhattan College's implied contract with Beck included a promise of in-person instruction. For example, as alleged in the complaint, the portal used by students to register for classes clearly listed the physical room in which those classes would take place. *See id.* And here, unlike in *Rynasko*, there is no indication that Manhattan College ever made a disclaimer in any of its materials that reserved the right to switch in-person classes to an online-only format. *See id.* at 197, 199–200. Nor is there any indication from either the complaint or the answer that Manhattan College had ever before made such a switch from in-person to online

services, such that students might have been on notice of that possibility at the time they enrolled. Taking the allegations in the complaint as true and drawing all reasonable inferences in Beck's favor, we would conclude under *Rynasko* that "[a] factfinder could reasonably determine that [Manhattan College], in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the [Manhattan College] educational experience for which students contracted." *Id.* at 199.

**B.** **Under *Croce* and *McCudden*, the district court's dismissal of Beck's breach of implied contract claim as to tuition should be affirmed.**

After *Rynasko*, the Second Department decided *Croce*, upholding the dismissal of a similar breach of contract claim for tuition payments against St. Joseph's College. *See Croce*, 195 N.Y.S.3d at 212–13. The Second Department concluded that the advertisements and representations that St. Joseph's College made, which shared similarities with the representations in *Rynasko* and in this case, were too vague to establish an implied contract. *See id.* at 213. As a result, the Second Department held that Croce's "amended complaint contain[ed] only conclusory allegations of an implied contract to provide exclusively in-person learning during the spring 2020 semester which are unsupported by any *specific*

11

*promise* that is material to the plaintiff's relationship with the college." *Id.* (emphasis added). And although this decision was in some tension with *Rynasko*, the Second Department sought to distinguish the two cases, noting that Croce's complaint "fail[ed] to articulate in more than conclusory fashion the manner in which [her] course of study – which [was] not stated – was impacted by the suspension of in-person learning." *Id.* (citing *Rynasko*, 63 F.4th at 199).

While the Second Department's decision in *Croce* implicitly called *Rynasko* into question, the Fourth Department's decision in *McCudden* explicitly rejected *Rynasko*'s approach. The Fourth Department explained that to state a claim under New York law "in this context, the cause of action for breach of contract requires an allegation of a specific promise to provide the plaintiff with exclusively in-person learning." *McCudden*, 2025 WL 814588, at *1 (internal quotation marks omitted). Indeed, the Fourth Department panel criticized the dissenting justices for "elevat[ing] the approach of the Second Circuit's split decision in *Rynasko* – and its focus on whether a defendant vaguely promised to 'provide *generally* in-person courses' – over . . . well-established New York law requiring a *specific* promise by a defendant to provide *exclusively* in-person learning." *Id.* at *2 (citation omitted). The Fourth Department further noted that "the Second Department's approach in

*Croce*" – rather than our approach in *Rynasko* – was "the accurate elucidation of New York law on this issue." *Id.*

    **C.    Certification is appropriate given the split between how federal and state courts are applying New York contract-law principles, which implicates significant state policy interests.**

"We may certify a question to the New York Court of Appeals where that court has not spoken clearly on an issue and we are unable to predict, based on other decisions by New York courts, how the Court of Appeals would answer a certain question." *Ortiz v. Ciox Health LLC*, 961 F.3d 155, 158 (2d Cir. 2020) (internal quotation marks omitted); *see also* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). In deciding whether to certify a case to the New York Court of Appeals, "we consider three questions: (1) whether there are authoritative state court [decisions]; (2) whether the issue is important to a state policy; and (3) whether certification can resolve the appeal." *Nitkewicz v. Lincoln Life & Ann. Co. of N.Y.*, 49 F.4th 721, 729 (2d Cir. 2022) (internal quotation marks omitted). Here, each weighs in favor of certification.

*First*, the New York Court of Appeals has not yet resolved whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments. *Second*, New York has an important

13

state interest in determining the allocation of losses arising from the COVID-19 pandemic between a student and a university and in more broadly setting forth guidance for whether and when courts should find an implied contract between students and universities. Indeed, the *McCudden* court explained that an important New York state "policy of non-interference with, and deference to, the decisions of educational institutions" would be undermined by "permitting . . . a cause of action on the basis that there was merely a promise of *generally* in-person courses" because that "necessarily would require courts to parse vague promises in an effort to ascertain the extent and relative value of the education provided by a [university]." 2025 WL 814588, at *2. *Third*, certification will definitively resolve Beck's appeal with respect to the dismissal of her breach of implied contract claim for tuition payments. If the New York Court of Appeals adopts the Fourth Department's approach, then Beck's complaint will surely be deemed to have failed to state a claim because she has not alleged any specific promises to provide exclusively in-person instruction in exchange for her tuition payments. But if the New York Court of Appeals affirms our approach in *Rynasko*, then, as outlined above, the judgment of the district court must just as surely be reversed.

**D.      We reserve decision on Beck's appeal of her other causes of action.**

Beck also appeals the district court's dismissal of her breach of contract claim with respect to fees and her unjust enrichment claims with respect to both tuition and fees.  Although it is unlikely that the answer to the certified question from the New York Court of Appeals will affect our resolution of these appellate issues, we nevertheless reserve decision on these challenges pending resolution of the certified question by the New York Court of Appeals.

## IV.      CONCLUSION

For the foregoing reasons, we **CERTIFY** the following question to the New York Court of Appeals:

> whether New York law requires a *specific* promise to provide *exclusively* in-person learning as a prerequisite to the formation of an implied contract between a university and its students with respect to tuition payments.

In certifying this question, we understand that the New York Court of Appeals may reformulate or expand the certified question as it deems appropriate.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court.  This panel will retain jurisdiction to decide the case

15

once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification.  Decision is **RESERVED**.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.